IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
June 12, 2001 Session

## JAMES P. STOUT v. STATE OF TENNESSEE

**Appeal as of Right from the Criminal Court for Shelby County
No. P-19100      John P. Colton, Jr., Judge**

_____

**No. W2000-01743-CCA-R3-PC - Filed February 7, 2002**

_____

On March 12, 1996, the petitioner, James P. Stout, was convicted by a jury in the Shelby County Criminal Court of one count of especially aggravated robbery and was sentenced to forty years incarceration in the Tennessee Department of Correction.  The petitioner elected not to pursue a direct appeal of his conviction and instead filed a petition for post-conviction relief, alleging the ineffective assistance of his trial counsel.  The post-conviction court denied the petition, and the petitioner now appeals this ruling.  Upon review of the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOE G. RILEY, J., and CORNELIA CLARK, SP. J., joined.

C. Michael Robbins, Memphis, Tennessee, for the appellant, James P. Stout.

Paul G. Summers, Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; William L. Gibbons, District Attorney General; and Thomas Hoover, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

### I.  Factual Background

In the early morning hours of November 11, 1995, the victim, Walter Bush, III, was returning home from his job as a cook at Perkins' Restaurant.  As he parked his car on a side street near his home, a car containing three men pulled up beside his car.  One of the men jumped from the car, pointed a gun at Bush, and ordered Bush to get out of his car and drop his keys.  Bush complied.  Pursuant to further instructions, Bush also handed the assailant his money.  A second man got out of the vehicle, retrieved Bush's keys, and got into the driver's side of Bush's vehicle.  The first assailant asked Bush if he would remember the assailant's face.  Bush replied that he would not.  The assailant then ordered Bush to turn around.  Bush did so and, fearing for his life, began to move

away.  At that time, Bush was shot in the neck by the first assailant.  The assailants then drove both vehicles away.  Bush survived the gunshot.

At trial, Lieutenant Hollis W. Hightower[1] of the Memphis Police Department testified that, through his investigation, he was able to identify Verico Bowers and Vassie Gandy as two of Bush's assailants.  However, Bush was unable to identify either Bowers or Gandy in a photographic line-up.   Bowers and Gandy revealed to Lieutenant Hightower that they knew the third assailant only by his "street name" of "Taurus."  Furthermore, Bowers and Gandy provided Lieutenant Hightower with the name and address of "Peco," who knew the real identity of "Taurus."  As a result of a conversation with "Peco,"[2] whose real name was Thomas Stout, Memphis Police officers discovered that "Taurus" was Stout's cousin, James P. Stout, the petitioner.

While examining the petitioner's arrest record, Lieutenant Hightower discovered a photograph of the petitioner.  Lieutenant Hightower showed this picture to Bowers and Gandy, who confirmed that the person in the picture was "Taurus," the third assailant.  After ascertaining that the petitioner lived with his grandmother, Frances Beasley, Lieutenant Hightower went to Beasley's home at approximately 1:45 a.m. on the morning of November 21, 1995.  He knocked on the door of the residence and, when the petitioner answered the door, entered the residence without a warrant and arrested the petitioner.  Lieutenant Hightower took the petitioner into custody and transported him to the police station where, approximately one hour later, the petitioner gave a statement confessing to the robbery.  Subsequently, Bush examined a photographic line-up containing a picture of the petitioner and identified the petitioner as his assailant.

The petitioner was convicted of the especially aggravated robbery of Bush and was sentenced to forty years incarceration in the Tennessee Department of Correction.  Subsequently, the petitioner filed a petition for post-conviction relief, which petition was denied.  The petitioner now appeals.

## II. Analysis

In order to be entitled to post-conviction relief, the petitioner must prove the factual allegations contained in his petition by clear and convincing evidence.  Tenn. Code Ann. § 40-30-210(f) (1997).  Clear and convincing evidence exists "when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence."  Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).  The post-conviction court must determine the credibility of witnesses and must also assign the weight and value to be accorded their testimony.  Black v. State, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990).  On appeal, we will confer the weight of a jury verdict upon the findings made by the post-conviction court at a hearing after observing witnesses testify and considering conflicting testimony.  Bratton v. State, 477 S.W.2d 754, 756 (Tenn. Crim. App. 1971).

---

[1]  At the time of the offense, Hightower held the rank of Sergeant.

[2]  This name is also spelled "Pico" in the record.

The petitioner must satisfy a two-pronged test in order to demonstrate ineffective assistance of counsel; namely, the petitioner must prove that the performance of counsel was deficient, and he must prove that such deficiency resulted in prejudice. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). In evaluating whether or not counsel's performance was deficient, this court must determine whether counsel's performance was within the range of competence required of attorneys in criminal cases . Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Prejudice results when there is a reasonable probability that, but for the unprofessional errors of counsel, the proceeding would have resulted differently. Campbell v. State, 904 S.W.2d 594, 597 (Tenn. 1995). If the petitioner fails to prove one of the prongs of the test, the petitioner has then failed to meet his burden of establishing ineffective assistance of counsel. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999).

Our supreme court recently expounded the standard by which appellate courts review a post-conviction court's resolution of ineffective assistance claims:

> [E]ffective assistance of counsel is an issue that presents a mixed question of law and fact . . . that is reviewed [on appeal] under a *de novo* standard of review. . . . As such, a [post-conviction] court's *findings of fact* underlying a claim of ineffective assistance of counsel are reviewed on appeal under a *de novo* standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise. However, a [post-conviction] court's *conclusions of law* . . . are reviewed under a purely *de novo* standard, with no presumption of correctness given to the [post-conviction] court's conclusions.

Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001) (emphasis in original) (citations omitted).

A. Inconsistent Theories

First, the petitioner argues that his counsel rendered ineffective assistance by advancing contrary and inconsistent theories of defense at trial. Namely, the petitioner contends that "the general tenor of the petitioner's trial testimony was to the effect that he was not at the scene of the Bush robbery;" however, in closing argument counsel also argued to the jury that the petitioner was not "personally responsible" for the shooting because there was no concrete proof at trial that, of the three assailants, the petitioner was the "trigger man."

At the post-conviction hearing, trial counsel testified that he frequently met with the petitioner prior to trial. Counsel conceded that he could not estimate how much time he spent with the petitioner on the instant case because he simultaneously represented the petitioner on several cases. Nevertheless, counsel maintained that he spent more than one thousand hours representing the petitioner on all of the cases. He averred that there was really no viable theory of defense available to the petitioner; the best he could accomplish was to call into question Bush's identification of the petitioner as the perpetrator. However, we note that, at trial, counsel argued to the jury in closing that

> [the] critical question that you have to answer is whether or not [the petitioner] was personally responsible for the shooting. Was his

-3-

identification proven to you that he was the person, beyond a reasonable doubt, and to a moral certainty.

At the post-conviction hearing, counsel explained that "I was trying to get . . . a not guilty. . . . I was trying to . . . use every available tactic that I could to get him off, period." Counsel further averred that "I didn't argue the law to the jury. The Court gives the jury the law. All I do is try to argue the facts. If I can find something to hinge something on, then I will, and that's exactly what I did there." At the conclusion of the hearing, the post-conviction court found that counsel's strategy was to primarily argue that Bush was mistaken in his identification of the petitioner, but counsel also used every available tactic in an effort to obtain a not guilty verdict. Furthermore, the post-conviction court found that, even if counsel was deficient, the petitioner was unable to demonstrate that he was prejudiced by counsel's performance because "[t]he evidence presented at trial was sufficient to convict regardless of any errors."

From our review of the record, we conclude that counsel was not deficient in his approach at trial. It is clear that counsel was attempting to discredit Bush's identification of the petitioner as his attacker. Accordingly, the bulk of counsel's closing argument emphasized the importance of properly identifying the petitioner as being one of Bush's assailants. However, counsel also tried to elicit sympathy from the jury by stressing that the petitioner might not have pulled the trigger. We find that this is a legitimate trial tactic that we are not prepared to second-guess. See Cooper v. State, 849 S.W.2d 744, 746 (Tenn. 1993). Moreover, we agree with the post-conviction court that, considering the strength of Bush's identification of the petitioner as his assailant, the proof was more than sufficient to convict the petitioner regardless of the argument by counsel. Thereby, the petitioner has failed to prove that he was prejudiced by any deficiency in counsel's performance. This issue is without merit.

## B. Motions to Suppress

Additionally, the petitioner argues that counsel was ineffective in failing to litigate a motion to suppress a confession the petitioner gave the police approximately one hour after his arrest and in failing to pursue a motion to suppress Bush's in-court identification of the petitioner, which identification stemmed from a photographic line-up containing a picture of the petitioner taken after his arrest. The petitioner also denies the truthfulness of his statement to police, claiming that it was made only after he was coerced and threatened by the officers. The heart of the petitioner's argument is that, because there was insufficient probable cause to arrest the petitioner and there was no warrant to authorize the arrest of the petitioner in his home, the arrest was illegal, and the statement and the in-court identification were inadmissible as the fruit of the illegal arrest.

Lieutenant Hightower testified at the post-conviction hearing that he did not obtain a warrant before he entered the petitioner's home and that he had ample time in which to obtain a warrant prior to the arrest. He asserted that he was looking for the petitioner in connection with the instant offense and also in connection with a murder. Believing that he had probable cause to arrest the petitioner, Lieutenant Hightower walked onto the porch of the house and knocked on the door. The petitioner opened the door, and Lieutenant Hightower recognized him as the person that he came to arrest.

Counsel testified at the post-conviction hearing that he filed a motion to suppress but did not pursue the motion. He additionally stated that, based upon his investigation, he concluded that a motion to suppress the statement or the identification would not be successful. Counsel related that he interviewed the petitioner and Beasley, the petitioner's grandmother. He also reviewed a police report that indicated that Beasley had consented to the entry. He stated that her testimony at the post-conviction hearing that she denied consent to the entry was not consistent with her previous statements. Counsel also expressed his concerns about the truthfulness of the petitioner due to inconsistencies uncovered by counsel during his investigation of the petitioner's alibi witnesses. Counsel opined that, based upon his investigation, the arrest was valid.

Counsel further added that he specifically chose not to pursue a motion to suppress regarding the photographic line-up because of his concern that the victim would have an additional opportunity to see the petitioner prior to trial. He explained that the main defense was that of misidentification. He believed that if the victim was able to view the petitioner at a suppression hearing, his identification at trial would be more conclusive.

The post-conviction court found that, given the foregoing facts, "it was not unreasonable for [counsel] to conclude that the arrest was valid." We likewise conclude that counsel's decision not to argue motions to suppress was strategic and was based upon adequate investigation. "[I]t is not our function to 'second guess' tactical and strategic choices pertaining to defense matters or measure a defense attorney's representation by '20-20 hindsight' when deciding the effectiveness of trial counsel." Campbell, 904 S.W.2d at 596 (quoting Hellard v. State, 629 S.W.2d 4, 9 (Tenn.1982)). Accordingly, the petitioner has not established that counsel was ineffective for failing to pursue a motion to suppress either the petitioner's statement or Bush's identification testimony.

C. Hearsay
Finally, the petitioner contends that counsel opened the door to inadmissible hearsay testimony by his ineffective cross-examination of Lieutenant Hightower at trial. The contested testimony is Lieutenant Hightower's description of how he discovered the identity of the petitioner through Bowers, Gandy, and Stout. Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). As a general rule, hearsay is not admissible during a trial, unless the statement falls under one of the exceptions to the rule against hearsay. Tenn. R. Evid. 802. However, the contested testimony was not offered for the truth of the matter asserted; the testimony was merely offered to describe why the petitioner was targeted as a perpetrator of the robbery. Accordingly, the testimony was admissible, even if counsel had not "opened the door" to the testimony. Additionally, counsel testified at the post-conviction hearing that

> [w]hat is actually going on here in this particular line of questioning to Officer Hightower was that the codefendants did not know the name of the other third person. All they knew was a nickname. That was it. They were not able to link it up one way or the other, period.

The questions raised by counsel attempted to call into question the identification of the petitioner. See Campbell, 904 S.W.2d at 596. Regardless, considering the strength of the proof against the

petitioner at trial, the petitioner has not established how this testimony prejudiced him.  This issue is without merit.

### III.  Conclusion

Based upon the foregoing, we affirm the judgment of the post-conviction court.

_____
NORMA McGEE OGLE, JUDGE